The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman (and the briefs and oral arguments before the Full Commission). The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
In accordance with the Pre-Trial Agreement entered into by the parties prior to the hearing and the additional stipulations entered into by the parties at the hearing, the parties stipulated as follows:
1. That the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and Aetna Casualty and Surety Company is the insurance carrier for the defendant-employer.
2. On July 12, 1991, the deceased plaintiff was employed by defendant-employer and was killed in a motor vehicle accident while he was driving defendant-employer's dump truck to pick up a load of gravel as part of his duties of employment.
3. The deceased plaintiff's average weekly wage at the time of the alleged injury, including overtime and all allowances, was $299.82, which yields a compensation rate of $199.88.
4. The parents of the deceased plaintiff allege that his death was the result of an injury by accident arising out of and in the course of his employment on July 12, 1991, and defendants deny any entitlement to worker's compensation benefits, based on their belief that the death was caused by the alleged intoxication of the deceased plaintiff.
5. When the parents of the deceased plaintiff did not believe that the testing that showed an alcohol content of 200 milligrams/deciliter was based on a sample taken from their son, they requested DNA testing, which was ordered on condition that the claim be dismissed with prejudice if the test showed that the sample was their son's and that the defendants would pay death benefits if the test showed that the sample was not their son's.
6. After DNA testing confirmed that the sample came from their son, the case was dismissed with prejudice. The parents of the deceased plaintiff later became aware of the possibility that the sample was contaminated and have moved to reopen the claim, which defendants oppose.
7. For purposes of the hearing, it was stipulated that the plaintiffs would testify in accordance with their affidavits filed with the motion.
8. The parties also stipulated that Larry and Wanda Stewart arrived at the scene of the wreck involving deceased plaintiff, removed him from the truck, and did not smell an odor of alcohol or see any alcohol containers. However, they did detect a strong odor of gasoline and oil.
9. The issue to be decided is whether the plaintiff's claim may be reopened.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Prior to the filing of the voluntary dismissal with prejudice, plaintiffs retained competent counsel to represent them in their claim for benefits pursuant to the Workers' Compensation Act and were not forced or coerced to enter into the agreement to dismiss the claim when the DNA testing ordered by Deputy Commissioner Sellers revealed that the blood sample was that of the decedent.
2. Through their attorney, David Gantt, the plaintiffs retained Dr. Burford, a retired pharmacologist from the University of North Carolina who specializes in rendering expert opinions in the area of alcohol related blood and breath studies, to investigate the blood testing. Dr. Burford concluded that the blood sample had been properly drawn, transported and identified as that of decedent and ruled out the possibility of contamination of the sample. He relayed this opinion to Mr. Gantt, plaintiff's attorney on January 21, 1992 and expressed his conclusions that the testing done by the State of North Carolina Chief Medical Examiners Office under Dr. Mason was correct and in accordance with proper procedure and that the findings and toxicology report were accurate.
3. Plaintiff's attorney, David Gantt, was satisfied with the conclusions reached by Dr. Burford and with his report.
4. After this claim was dismissed with prejudice, plaintiff, Brenda McDonald, contacted Dr. Radisch, who questioned the validity of the blood sample of decedent because of the possibility of contamination due to severe decomposition, internal organ rupture and the size of the blood sample. However, Dr. Radisch could not state to a reasonable degree of medical certainty that there was in fact, severe decomposition or petrification, or that decedent suffered severe internal injuries. She also testified that the sample was "possibly" contaminated because if it were found to be true that the decedent had only drunk four beers before midnight the day prior to the accident he should have metabolized all of the alcohol in his system. However, that would be inconsistent with the presence of any alcohol in decedent's body at the time of the accident attributable to the possible internal organ rupture or size of the blood sample leaving only as a justifiable cause for the presence of said alcohol, the "possibility" of contamination due to severe decomposition.
5. Dr. Bethea, the medical examiner for Harnett County, North Carolina withdrew the sample from decedent as part of her normal duties and forwarded the sample to the medical examiner's office for alcohol analysis. Dr. Bethea was unable to obtain blood with the initial sub-clavicle puncture and performed a thoracic puncture in order to obtain a sample from decedent. Both of these punctures were approximately twelve inches above the stomach area. Dr. Bethea noticed no unusual thickness or discoloration of the fluid which would suggest contamination with stomach contents. She saw no indication of a "flailed chest" and no bruising, laceration or contusion of the stomach area. She observed no evidence of major internal injury and it was her professional opinion that the decedent died of multiple traumas to the head and that he did not suffer from a direct trauma to the thoracic cavity or to the stomach area and that there was no evidence of any major internal injuries. She furthermore detected no signs of decomposition ruling out "the possibility" as advanced by Dr. Radisch that "decomposition" contaminated the sample taken from decedent.
6. Dr. Mason was the Chief Medical Examiner for the State of North Carolina at the time the sample taken by Dr. Bethea from decedent was received by the Chief Medical Examiner's Office. Under his direction, the fluid sample forwarded to the medical examiner's office by Dr. Bethea was examined and described as "approximately one milliliter, maybe slightly more, blood tinged, yellow fluid, slightly turbid." The fluid was identified on the toxicology submission form as being pleural fluid. Pleural fluid has been received and examined by the State Medical Examiner's Office previously for alcohol analysis. There was no indication on visual examination that the fluid was contaminated, as no particles of dirt, vegetable matter or other types of foreign objects that could be indicative of material from the gastric contents was observable. The alcohol analysis was performed by duplicate gas chromatographic and the concentration of alcohol was reported on the toxicology report dated July 23, 1991 to be 200 milligrams per deciliter.
7. Pleural fluid is a serum filtrate which has a higher concentration than a blood sample which would be lower by approximately 20%. Therefore, applying the ratio of pleural fluid to blood on a 1.2 basis, decedent would have had a blood alcohol content of 167 milligrams per deciliter (.167) at the time of the accident. In Dr. Mason's expert opinion, this blood alcohol level would have produced a significant impairing affect relating to critical aspects required for safe operation of a motor vehicle including attention, perception, judgment and cognition, sense of caring, caution, psychomotor capabilities and psychomotor control of the vehicle.
8. The sample from decedent analyzed by the Chief Medical Examiner's Office was obtained from a point on the body distal from the gastrointestinal system, making direct puncture of the esophagus or the stomach highly unlikely. However, assuming arguendo, that the alcohol contained in the sample was from gastric contents due to internal organ disruption, in Dr. Mason's expert opinion, decedent would have had to have to consumed alcohol a very short time before the accident.
9. Nevertheless, the evidence shows that the sample was properly received and tested in accordance with the acceptable standards of testing alcohol content at the Office of the Chief Medical Examiner in 1991 and the toxicology report generated by said office of July 23, 1991 was accurate. There exists no evidence in the record to indicate that the "possibility" of contamination as advanced by Dr. Radisch due to decomposition, internal organ rupture or due to the size of the sample were present in this case.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. Plaintiffs have not produced sufficient evidence to prove by the greater weight of the evidence that the sample taken from the decedent by Dr. Bethea and forwarded to the State Medical Examiner's Office for alcohol analysis was, in fact, contaminated. McCully v.Catawba College, 266 N.C. 513, 146 S.E.2d 780 (1968).
2. Plaintiffs have failed to show good grounds in support of their motion to set aside the voluntary dismissal with prejudice filed of record and to reopen this case. Pickard v.Motor Convoy, Inc., 82 N.C. App. 238, 346 S.E.2d 164 (1986), reversed on other grounds, 322 N.C. 363, 368 S.E.2d 582 (1988).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiffs' motion to set aside the voluntary dismissal with prejudice and to reopen the claim, is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ______________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________________ J. HOWARD BUNN CHAIRMAN
S/ ______________________________ THOMAS J. BOLCH COMMISSIONER